1 **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abdulamir Al-Asadi, an individual, | No. CV-09-47-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Phoenix, a municipality; and Clint Crockett, Kane Kimble, and Robert Metrick, in their individual capacities and as officers with the City of Phoenix Police Department, | |
| Defendants. | |

On September 20, 2007, Abdulamir Al-Asadi went to the apartment of his girlfriend, Louzetta Scott, to visit her and their two children. Although Ms. Scott had invited Al-Asadi to come over, his visit was in violation of a protective order prohibiting him from going near the apartment. Upon arrival, Al-Asadi was physically assaulted by Ms. Scott's brother, Raynard Scott. A security guard called 911, and Phoenix Fire Department paramedics and three City of Phoenix police officers, Clint Crockett, Kane Kimble, and Robert Metrick, arrived at the scene within minutes. Al-Asadi claims, among other things, that the officers directed the paramedics to leave before completing their evaluation and treatment, that he was then assaulted and seriously injured by Officer Crockett when he called 911 to obtain medical treatment, that paramedics returned and were again told to leave before providing treatment, and that he was arrested and left handcuffed and hooded in the back of a patrol car for more than an hour before finally being dropped off at the hospital.

Officer Kimble wrote a report recommending that Al-Asadi be charged with disorderly conduct. Al-Asadi was charged with that offense a few weeks later, but was acquitted following a bench trial in July 2008. He claims that the officers provided false information and otherwise conspired to advance his wrongful prosecution.

Al-Asadi filed suit in state court against the City and the three police officers. *See Al-Asadi v. City of Phoenix*, No. CV2008-021261 (Ariz. Super. Ct. Sept. 3, 2008). The case was removed to this Court on the basis of federal question jurisdiction. Doc. 1. The amended complaint asserts six claims: negligence, false arrest and imprisonment, assault and battery, intentional infliction of emotional distress, malicious prosecution, and civil rights violations under 42 U.S.C. § 1983. Doc. 1-1 at 12-19. The assault and battery claim is asserted only against Officer Crockett and the City (*id.* ¶¶ 38-40), the other state claims are asserted against all Defendants (*id.* ¶¶ 30-7, 41-48), and the § 1983 claim is asserted against the officers in their individual capacities (*id.* ¶¶ 49-56). The negligence, false arrest and imprisonment, and emotional distress claims asserted against Officers Kimble and Metrick have been dismissed (Doc. 8).

Defendants have filed a motion seeking summary judgment on all remaining claims except the assault and battery, emotional distress, and § 1983 excessive force claims asserted against Officer Crockett. Doc. 107. The motion is fully briefed. Docs. 120, 128. For reasons stated below, the motion will be granted in part and denied in part.[1]

**I.     Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed

---

[1]Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. The Negligence Claim (Count One).

"The elements of actionable negligence are 'the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately caused by that breach.'" *Flowers v. K-Mart Corp.*, 616 P.2d 955, 957 (Ariz. Ct. App. 1980) (citation omitted). Plaintiff alleges in count one of the complaint that Defendants breached their "duty of care to Plaintiff by, among other things, instructing paramedics to leave and preventing [Plaintiff] from obtaining medical care." Doc. 1-1 ¶ 32. Plaintiff further alleges that he sustained injury as a direct and proximate result of Defendants' negligence. *Id.* ¶ 34.

Summary judgment is appropriate, Defendants argue, because there is no evidence that the alleged denial of prompt medical care caused injury to Plaintiff. Doc. 107 at 8-9. Defendants' medical expert, Dr. Mark Solem, has opined that Plaintiff's injuries were not exacerbated between the time the first paramedics were sent away and when Plaintiff was admitted for treatment at Good Samaritan Hospital. Docs. 108 ¶ 186, 108-1 at 371.

Plaintiff "denies" that opinion (Doc. 121 at 30), but presents no evidence of his own. To survive summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt at to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must set out "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Plaintiff's bare denial of Dr. Solem's opinion does not suffice. *See id.*

Plaintiff asserts that when Officer Crockett sent the paramedics away the first time, it set the stage for his subsequent efforts to obtain medical care, which resulted in injuries sustained from the assault by Crockett or, as Defendants allege, from Plaintiff's accidental

1 fall into a stop sign. Doc. 120 at 8. Plaintiff contends that Defendants are therefore liable for the injuries caused by the assault or fall under section 457 of the Restatement (Second) of Torts. *Id.* Defendants argue, correctly, that section 457 does not save the negligence claim. Doc. 128 at 4-5.

Section 457 provides that where "the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons *in rendering aid which the other's injury reasonably requires*[.]" Restatement (Second) of Tort § 457 (emphasis added). Plaintiff does not claim that he suffered further injury as a result of efforts to treat him. Instead, he claims that he was assaulted by Officer Crockett and suffered a fractured jaw and other serious injuries when he called 911 after the paramedics were sent away. Doc. 120 at 8; *see* Doc. 1-1 at 14-15. The comments to section 457 make clear that the negligent actor is liable not for all additional injury inflicted on another by third persons, but only for harm caused by "efforts which third persons *reasonably make for the purpose of curing him of the injuries inflicted by [the actor]*." Restatement (Second) of Tort § 457, cmt. e (emphasis added); *see Ritchie v. Krasner*, 211 P.3d 1272, 1282-83 (Ariz. Ct. App. 2009) (doctor found liable under § 457 where his misdiagnosis led to further medical treatment which resulted in a lethal overdose of medication); *Barrett v. Harris*, 86 P.3d 954, 959 (Ariz. Ct. App. 2004) (noting that § 457 can apply to successive acts of medical malpractice). Because there is no allegation or evidence in this case that Plaintiff suffered additional harm through efforts to treat his injuries, section 457 of the Restatement does not apply.

Plaintiff has failed to demonstrate a triable issue as to whether the denial of prompt medical care caused him injury. The Court will grant summary judgment on the negligence claim in favor of the City and Officer Crockett.

**III.    The False Arrest and Imprisonment Claim (Count Two).**

The Arizona Supreme Court has defined false arrest and imprisonment "as the detention of a person without his consent and without lawful authority." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975). "The essential element necessary to constitute

either false arrest or imprisonment is unlawful detention." *Id.* A detention that occurs pursuant to legal authority, such as an arrest based on probable cause, "is not an unlawful detention." *Id.*

The false arrest and imprisonment claim fails as a matter of law, Defendants argue, because probable cause existed to arrest Plaintiff for having violated the order of protection obtained by Ms. Scott. Doc. 107 at 12-13. The Court agrees.

There is no dispute that at the time of Plaintiff's arrest, there was a valid order of protection prohibiting him from being at Ms. Scott's apartment. *Scott v. Al-Asadi*, No. FC2004-006050 (Ariz. Super. Ct. Nov. 27, 2006); *see* Doc. 108-1 at 122-23. Under A.R.S. § 13-2810, a person commits the crime of interfering with judicial proceedings where he "[d]isobeys or resists the lawful order, process or other mandate of a court[.]" A.R.S. § 13-2810(A)(2). The order of protection itself warns Plaintiff of this potential crime: "If you disobey this Order, you may also be arrested and prosecuted for the crime of interfering with judicial proceedings[.]" Doc. 108-1 at 122. The statute governing protective orders, A.R.S. § 13-3602, explicitly authorizes "[a] peace officer, with or without a warrant, [to] arrest a person if the peace officer has probable cause to believe that the person has violated § 13-2810 by disobeying or resisting an order [of protection.]" A.R.S. § 13-3602(M); Ariz. Legis. Serv. Ch. 276 (S.B. 1266) (West May 7, 2010); *see Douglass v. State*, 195 P.3d 189, 192 (Ariz. Ct. App. 2008) ("A.R.S. § 13-3602 specifically provides that a domestic-violence order of protection may be enforced by prosecution under A.R.S. § 13-2810(A)(2) for disobeying the lawful order of a court.") (citing former subsection (N) of A.R.S. § 13-3602, now subsection (M)).

"Probable cause to make an arrest exists when the arresting officer has reasonably trustworthy information of facts and circumstances sufficient to lead a reasonable man to believe an offense is being committed and that the person to be arrested committed it." *Hansen v. Garcia*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1985); *see State v. Spears*, 908 P.2d 1062, 1069 (Ariz. 1996). Plaintiff agrees (Doc. 120 at 14) that "[w]hether a given state of facts constitutes probable cause is always a question of law to be determined by the court."

*Slade*, 541 P.2d at 553; *see Sarwark Motor Sales, Inc. v. Woolridge*, 354 P.2d 34, 36 (Ariz. 1960). Prior to his arrest, both Plaintiff and Ms. Scott told the officers that Ms. Scott had obtained an order of protection against Plaintiff. Doc. 108-1 at 41, 88, 106-07, 256, 268; Docs. 121-2 at 25, 121-5 at 8. The Court finds that those admissions, coupled with Plaintiff's presence at Ms. Scott's apartment, provided probable cause to arrest Plaintiff for interfering with judicial proceedings in violation of A.R.S. § 13-2810(A)(2). *See* Doc. 108-1 at 261, ¶ 10. Given this finding, the Court need not address whether probable cause existed to arrest Plaintiff for disorderly conduct. Claims of false arrest and imprisonment fail when any potential crime is supported by probable cause. *See Lacy v. County of Maricopa*, 631 F. Supp. 2d 1183, 1194 (D. Ariz. 2008) ("'Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest.'") (citations omitted).

The Court will grant summary judgment on count two in favor of the City and Officer Crockett because there is "no evidence of the essential element, unlawful detention, necessary to support an action for either false arrest or false imprisonment." *Slade*, 541 P.2d at 552; *see Hansen*, 713 P.2d at 1265 ("After the trial court determined that Hansen's arrest was legal and made with probable cause, it correctly granted summary judgment in favor of the officers and the city because false arrest and false imprisonment are based upon an unlawful detention."); *Cullison v. City of Peoria*, 584 P.2d 1156, 1161 (Ariz. 1978) (affirming summary judgment on false imprisonment claim where there was no showing of lack of probable cause); *see also* A.R.S. § 13-3602(P) ("A peace officer who makes an arrest pursuant to this section or § 13-3601 is not civilly or criminally liable for the arrest if the officer acts on probable cause and without malice.").

Plaintiff makes several arguments as to why summary judgment on count two is not appropriate. None has merit.

Plaintiff argues that the only evidence supporting an arrest under A.R.S. § 13-2810 was Ms. Scott's statement that there was an order of protection in existence. Doc. 120 at 15. To the contrary, Plaintiff himself specifically testified that he told police there was an order

of protection against him:

> Q. Did the officer who was standing with you ask if it was true that Louzetta had an order of protection against you?
>
> A. Yes. He asked me that, and I told him yes, there is an order of protection against me.

Docs. 108-1 at 41, 121-2 at 25 (Pl.'s Dep. at p. 327, ll. 5-9). Moreover, where an officer receives clear and specific information from a potential victim, it is reasonable for the officer to rely on that information in deciding whether a crime has been committed by the suspect. *See Slade*, 541 P.2d at 553. "Police depend upon the information furnished by citizens, and, unless the contrary appears, they should be able to depend upon the presumption that men speak the truth." *Id.*; *see* A.R.S. § 13-3602(R)(4) ("A peace officer may also rely on the statement of any person who is protected by the order that the order remains in effect.").

Relying on the rule of *corpus delicti*, Plaintiff contends that "the statement of a suspect, standing alone, does not give rise to arrest or convict a person." Doc. 120 at 14. "The rule of *corpus delicti* is that 'an accused may not be *convicted* on his own uncorroborated confessions.'" *State v. Jones*, 6 P.3d 323, 326 (Ariz. Ct. App. 2000) (citation omitted; emphasis added). The rule has no application in determining whether probable cause exists to make an arrest. *See id.* at 328. Moreover, Plaintiff's statement that an order of protection existed did not stand alone, but was corroborated by Ms. Scott. Doc. 108-1 at 88, 106-07.

Plaintiff asserts that there was no probable cause because the officers were unable to verify an actual order of protection (Doc. 120 at 15), but cites no legal authority in support of this assertion. "Probable cause is something less than the proof needed to convict and more than an unsupported suspicion." *Hansen*, 713 P.2d at 1265. The officers' suspicion that Plaintiff had violated A.R.S. § 13-2810(A)(2) was, at the time of his arrest, well founded. The fact that verification of the order of protection may have been required to convict does not change this conclusion.

Finally, Plaintiff notes that Officer Crockett has testified that he believed no probable cause existed to arrest Plaintiff for violating A.R.S. § 13-2810(A)(2). Docs. 120 at 15, 121-8

at 9. But the "standard of probable cause is not a subjective standard but an objective one." *State v. Vaughn*, 471 P.2d 744, 746 (Ariz. Ct. App. 1970); *see Whren v. United States*, 517 U.S. 806, 813 (1996). Officer Crockett's subjective opinion is therefore not material. *Id.*

**IV.     The City's Immunity from Claims Based on Felonious Conduct.**

Plaintiff brings his state law claims against the City under the doctrine of *respondeat superior*. Doc. 1-1 at 13, ¶ 6. The City argues for immunity on the claims for false arrest and imprisonment, assault and battery, and intentional infliction of emotional distress pursuant to A.R.S. § 12-820.05. Doc. 107 at 9. That statute provides that "[a] public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action." A.R.S. § 12-820.05(B). The City claims that counts two through four all arise from alleged conduct of the officers that, if taken as true, would constitute the felonies of aggravated assault and unlawful imprisonment. Doc. 107 at 9-12; *see* A.R.S. §§ 13-1203, 13-1204, 13-1303. The City further claims, and Plaintiff does not dispute, that there is no evidence showing that the City knew of a propensity for those actions on the part of the officers. Doc. 107 at 12.

The City and Plaintiff each rely on *State v. Heinze*, 993 P.2d 1090 (Ariz. Ct. App. 1999). The issue in that case was whether the State had a duty to indemnify a former employee for damages caused by his sexual harassment. The relevant statute, A.R.S. § 41-621, excluded from State insurance coverage "an act or omission determined by a court to be a felony." 993 P.2d at 1094. The City cites *Heinze* for the proposition that no felony conviction is required for immunity to apply under A.R.S. § 12-820.05(B). Docs. 107 at 9-10, 128 at 7. The Court agrees with that proposition.

Section 12-820.05, like the insurance coverage statute at issue in *Heinze*, does not specify that the public employee must have been convicted of a felony. 993 P.2d at 1094. Nor does it provide that the public entity's immunity must arise from an act or omission determined to be a felony by a criminal court. *Id.* According to the statute itself, any court may make the requisite determination. The Court concludes that no felony conviction is

1 required for immunity to apply under A.R.S. § 12-820.05(B). *See McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003) (concluding that the Arizona Supreme Court would follow the reasoning in *Heinze* and allow A.R.S. § 12-820.05(b) to apply despite the lack of a felony conviction); *see also Rand v. City of Glendale*, No. 1 CA-CV 07-0722, 2008 WL 5383363, at *6 (Ariz. Ct. App. Dec. 26, 2008) (applying the same reasoning in *Heinze* and concluding that "a felony conviction is not a prerequisite to application of the immunity provided by A.R.S. § 12-820.05").

Citing *Heinze*, Plaintiff contends that A.R.S. § 12-820.05 raises an indemnification issue between the City and the offending officers because "the statute addresses when a public employee will, or more specifically, will not be, liable for certain acts or omissions." Doc. 120 at 9. Plaintiff asserts that this indemnification dispute is not his to fight. *Id.* Section 12-820.05 does not address indemnification issues, nor does it involve the scope of insurance coverage like the statute at issue in *Heinze*. Section 12-820.05 is an immunity statute. It explicitly provides that a public entity "is not liable" for certain felonious acts or omissions by a public employee. A.R.S. § 12-820.05(B). The Court concludes that the City properly may seek immunity from Plaintiff's state law claims under the statute.

Plaintiff contends that a ruling on the immunity defense would be premature because the Court is not in position to make the "findings" required by section 12-820.05. Doc. 120 at 10-11. Defendants note, correctly, that Plaintiff misinterprets summary judgment analysis. Doc. 128 at 7. In deciding Defendants' summary judgment motion, Plaintiff's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the evidence, so construed, shows that there is no triable issue of fact and Defendants are entitled judgment as a matter of law, summary judgment should be entered. Fed. R. Civ. P. 56(c)(2). Moreover, because the immunity provided by section 12-820.05 is intended to protect a public entity "from suit, not just liability, [it] should be resolved by the court 'at the earliest possible stage in litigation.'" *Link v. Pima County*, 972 P.2d 669, 675 (Ariz. Ct. App. 1998) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). The City's claim of immunity is not premature.

With respect to count three, the state claim for assault and battery, Plaintiff does not dispute that some of the conduct underlying that claim may be construed as felonious aggravated assault. Doc. 120 at 12. A person commits that crime under Arizona law where he knowingly touches another person with the intent to injure and either fractures a body part or otherwise causes serious physical injury. A.R.S. §§ 13-1203(A), 13-1204(A)(1). Plaintiff claims that, without provocation or warning, Officer Crockett kicked and punched him in the face and slammed his head against a sign pole causing him to suffer a fractured jaw. Doc. 108-1 at 50-52; Doc. 121 at 37, ¶ 233. To the extent that alleged felonious conduct on the part of Officer Crockett is part of the claim for assault and battery (count three), the City is immune from liability under A.R.S. § 12-820.05(B). Similarly, the City is entitled to immunity to the extent Plaintiff relies on Officer Crockett's alleged aggravated assault in support of his claim for intentional infliction of emotional distress (count four). The Court will grant summary judgment in this regard. Because the finding of probable cause above is fatal to the false arrest and imprisonment claim (count two), the Court need not address the City's immunity from that claim.

## V.     The Emotional Distress Claim (Count Four).

The tort of intentional infliction of emotional distress requires a plaintiff to prove, among other things, that the defendant's conduct was extreme and outrageous. *See Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). The City argues that it is entitled to partial summary judgment on count four because the purported misconduct on the part of Officers Metrick and Kimble was not, as a matter of law, extreme and outrageous. Docs. 107 at 14-15, 128 at 14-15. The City is correct.

To satisfy the "extreme and outrageous" element, a defendant's conduct must be "'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz. v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citation omitted). The conduct must fall "at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home*, 619 P.2d 1032, 1035 (Ariz.

1980). It is "'the duty of the court in the first instance, as society's conscience, to determine whether the acts complained of can be considered as extreme and outrageous conduct[.]'" *Helfond v. Stamper*, 716 P.2d 70, 72 (Ariz. Ct. App. 1986) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (1969)).

Plaintiff agrees that Officer Metrick did not engage in extreme and outrageous conduct. Doc. 120 at 16. With respect to Officer Kimble, Plaintiff claims (1) that he was involved in the "cover up" of Officer Crockett's wrongful conduct, (2) that he made the decision to send the paramedics away the second time, (3) that he left Plaintiff sitting in the back of the patrol car for more than an hour while Plaintiff was bleeding profusely, (4) that he decided Plaintiff could wait hours before receiving medical care despite knowing that Plaintiff had a broken jaw, and (5) that he wrote a misleading police report knowing that Plaintiff had been assaulted by a fellow officer. Doc. 120 at 6-7. This conduct, even if actionable on other grounds, is not so extreme and outrageous as to go beyond all bounds of decency and be regarded as atrocious and utterly intolerable. *Mintz*, 905 P.2d at 563; *see Rondelli v. Pima County*, 586 P.2d 1295, 1302 (Ariz. Ct. App. 1978) (conduct by officers was not outrageous even though the plaintiff was stereotyped as a "Mafioso," detained with his family for an hour without explanation, searched and handcuffed outside his car in full view of motorists on a street frequently used by his neighbors and friends, treated as a dangerous criminal, and falsely arrested); *see also Pankratz v. Willis*, 744 P.2d 1182, 1192 (Ariz. Ct. App. 1987) (conduct "may be otherwise tortious, and even illegal, and not be outrageous").

As explained more fully above, the City is entitled to immunity to the extent Plaintiff relies on Officer Crockett's alleged aggravated assault in support of his claim for intentional infliction of emotional distress. The other alleged conduct on the part of Officer Crockett – namely, sending away paramedics and withholding vital information from the police report (Doc. 120 at 12) – does not rise to the level of extreme and outrageous conduct.

The Court will grant summary judgment in favor of the City on the claim for intentional infliction of emotional distress.

**VI.    The Claim for Malicious Prosecution (Count Five).**

"The essential elements of malicious prosecution are (1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975). The first two elements are met. Plaintiff was prosecuted for disorderly conduct in violation of A.R.S. § 13-2904 (Doc. 108-1 at 275), and was acquitted of that charge following trial (*id.* at 82). Defendants seek summary judgment on the grounds that probable cause existed, that the officers did not serve as prosecutors, and that there is no evidence of malice. Doc. 107 at 17-18. As explained more fully below, the Court finds that the officers had probable cause to recommend the charge of disorderly conduct against Plaintiff. *See* Doc. 108-1 at 270. The Court accordingly need not address Defendants' other arguments.

A person commits disorderly conduct if, with intent to disturb the peace or quiet of others, such person engages in fighting, violent, or seriously disruptive behavior, makes unreasonable noise, or uses abusive or offensive language or gestures to any person in a manner likely to provoke an immediate physical response. A.R.S. § 13-2904(A)(1)-(3). Defendants have presented undisputed evidence that the apartment security guards told the officers that Plaintiff's behavior was disorderly and had disturbed the peace of a significant number of residents. Docs. 108 ¶ 156, 108-1 at 253, 269. "With such information it was reasonable for the officer[s] to believe that [Plaintiff] had committed an offense." *Slade*, 541 P.2d at 553. The officers, therefore, had probable cause to recommend that Plaintiff be prosecuted for disorderly conduct. *See id.* (noting that "'an eyewitness identification of an individual furnishes probable cause to assume the guilt of the party identified'") (citation omitted); *Lantay v. McLean*, 406 P.2d 224, 226 (Ariz. Ct. App. 1965) (officers had probable cause to charge the plaintiff with disturbing the peace based on his rude conduct and abusive language).

While Plaintiff has denied making unreasonable noise or using profanity (Doc. 121 ¶ 258), this is not sufficient to negate probable cause. As noted above, police depend upon

information furnished by citizens and may rely "on the presumption that men speak the truth." *Slade*, 541 P.2d at 553.

Plaintiff asserts that the police report (Doc. 108-1 at 265-75) was not factually correct. Doc. 120 at 18. But writing a misleading report "does not change the fact that the information upon which the officer acted furnished probable cause." *Slade*, 541 P.2d at 553. "The acts of the officer concerning the report may constitute another tort, but they do not constitute malicious prosecution." *Id.*

It is worth noting that Officer Kimble's report concludes with a conditional recommendation that charges be filed: "If it should found that the elements of disorderly conduct are met [in] reference [to] Abdulamir Al-Asadi and Louzetta Scott, I request that both individuals be charged with one count of disorderly conduct." Doc. 108-1 at 270. The report was submitted to the City's prosecutors for review (*id.* at 274), which led to a complaint being filed against Plaintiff (*id.* at 275). The law is clear that "a malicious prosecution claim will not lie where a prosecuting attorney is left to judge the propriety of proceeding with the charge and acts on his own initiative in doing so." *Walsh v. Eberlein*, 560 P.2d 1249, 1252 (Ariz. Ct. App. 1976).

In summary, the Court concludes that probable cause existed to prosecute Plaintiff for disorderly conduct. Because probable cause "constitutes a complete and absolute defense to an action for malicious prosecution[,]" *Slade*, 541 P.2d at 553, the Court will grant summary judgment on count five in favor of Defendants. *See Cullison v. City of Peoria*, 584 P.2d 1156, 1161 (Ariz. 1978) (affirming summary judgment on malicious prosecution claim where there was no showing of lack of probable cause).

**VII. The Section 1983 Claims (Count Six).**

Plaintiff asserts the following claims against the officers under 42 U.S.C. § 1983: excessive force and false arrest under the Fourth Amendment and deliberate indifference to his serious medical needs, malicious prosecution, and offensive and shocking conduct under the Due Process Clause of the Fourteenth Amendment. Doc. 1-1 at 18, ¶¶ 50-54. Defendants argue that they are entitled to qualified immunity on all claims except the excessive force

claim asserted against Officer Crockett. Doc. 107 at 18. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

### A. Excessive Force.

Plaintiff agrees that no excessive force was used by Officers Metrick and Kimble. Doc. 120 at 19. The Court will grant summary judgment in their favor on the § 1983 excessive force claim.

### B. False Arrest.

To prevail on his § 1983 claim for false arrest, Plaintiff must "demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). Probable cause "exists when under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the person arrested] had committed a crime." *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir.1991). As explained more fully above, probable cause existed to arrest Plaintiff for interfering with judicial proceedings in violation of A.R.S. § 13-2810(A)(2). The Court will grant summary judgment on the § 1983 false arrest claim.

### C. Malicious Prosecution.

To prevail on his § 1983 claim for malicious prosecution, Plaintiff must show that Defendants "'prosecuted him with malice and without probable cause, and that they did so for the purpose denying him equal protection or another specific constitutional right.'" *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (brackets and citation omitted). "[P]robable cause is an absolute defense to malicious prosecution." *Id.* The mere fact "a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995). The finding above that the officers had probable cause to pursue charges against Plaintiff for disorderly conduct requires summary judgment in their favor. *See Lassiter*, 556 F.3d at 1054-55 (affirming

1  summary judgment on state and federal malicious prosecution claims where there was
2  probable cause to initiate the prosecution).

### D. Offensive and Shocking Conduct.

The complaint alleges that Defendants' conduct was "offensive and shocking" in violation of the Due Process Clause. Doc. 1-1 at 18, ¶ 54. Defendants argue that their alleged conduct cannot be construed as sufficiently egregious to support a substantive due process claim. Doc. 107 at 24 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)). Plaintiff has made clear that he does not intend to assert a separate substantive due process claim. Doc. 120 at 22. The Court will therefore grant summary judgment in this regard.

### E. Deliberate Indifference.

The complaint alleges that the individual Defendants hindered Plaintiff's "access to health care in deliberate indifference to his injuries, in violation of the Due Process Clause of the Fourteenth Amendment[.]" Doc. 1-1 at 18, ¶ 52. The Due Process Clause requires that medical care be provided to persons injured while being apprehended by the police. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). That due process right "is at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.* To state a § 1983 medical claim, the plaintiff must show that the defendants acted with "'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff shows a serious medical need by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.* The deliberate indifference prong is satisfied by showing a purposeful act or failure to respond to the plaintiff's pain or possible medical need and resulting harm. *Id.*

Defendants seek summary judgment on the ground that their conduct does rise to the level of a constitutional violation. Docs. 107 at 21-22, 128 at 18-19. The Court agrees with respect to Officers Metrick and Kimble, but will deny summary judgment as to Officer Crockett.

Plaintiff has identified no evidence showing an act or omission on the part of Officer

1  Metrick that would amount to deliberate indifference to his serious medical needs. Plaintiff
2  claims that Officer Kimble actually assisted him during the alleged assault by Officer
3  Crockett. Doc. 121 ¶¶ 51-53, 238. He further claims that Officer Kimble told the
4  paramedics that he would take Plaintiff to the hospital to have him checked out. *Id.* ¶ 60.
5  Kimble was willing to do that despite the fact that the paramedics stated that Plaintiff did not
6  appear to be in need of further medical treatment. *Id.* ¶ 249. While Officer Kimble did have
7  Plaintiff wear a spit hood for more than hour before taking him to the hospital (*id.* ¶¶ 64, 66),
8  Plaintiff admits that he never told Kimble that the hood caused difficulty in his breathing
9  (*id.* ¶ 65). A jury could not reasonably find that Officer Kimble was deliberately indifferent
10 to Plaintiff's serious medical needs.

11 The opposite conclusion could be drawn with respect to Officer Crockett. This Circuit
12 has made clear that deliberate indifference "'may appear when [police officers] deny, delay
13 or intentionally interfere with medical treatment[.]'" *Jett*, 439 F.3d at 1096 (citation
14 omitted). A serious medical need exists where the failure to treat could result in the
15 "'unnecessary and wanton infliction of pain.'" *Id.* The evidence, when viewed in the light
16 most favorable to Plaintiff, shows that Officer Crockett knew that Plaintiff had stomach pain
17 and difficulty breathing (*id.* ¶¶ 38, 219, 225), that Crockett nevertheless told the paramedics
18 to leave (*id.* ¶¶ 40-42, 222-24), that Crockett attacked and seriously injured Plaintiff when
19 he called 911 to obtain medical treatment (*id.* ¶¶ 44-50, 232-35), and that Crockett
20 handcuffed Plaintiff and put him in the patrol car for more than an hour (*id.* ¶¶ 63, 66, 254)
21 despite knowing that Plaintiff was bleeding from the mouth and face, breathing heavy, and
22 coughing up tissue (*id.* ¶¶ 120-22, 241, 251-53). A jury reasonably could find that Officer
23 Crockett was deliberately indifferent to Plaintiff's serious medical needs.

24 Defendants note that Plaintiff did not immediately seek treatment when he was
25 dropped off at Phoenix Baptist Hospital, but instead had his friends take him to two other
26 hospitals. Doc. 107 at 22. While this fact may discredit Plaintiff's claim that he was in
27 severe pain, "[c]redibility determinations, the weighing of evidence, and the drawing of
28 inferences from the facts are jury functions, not those of a judge[.]" *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 225 (1986).

Defendants further note that Plaintiff's injuries were not exacerbated as a result of any delay in treatment. Doc. 107 at 22. But a § 1983 claim may be supported by "further significant injury *or the 'unnecessary and wanton infliction of pain.*'" *Jett*, 439 F.3d at 1096 (emphasis added).

With respect to Plaintiff's § 1983 claim of deliberate indifference, the Court will grant summary judgment in favor of Officers Metrick and Kimble and deny summary judgment as to Officer Crockett.

**VIII. Damages.**

Defendants argue that there is no evidence to support an award of punitive damages against Officers Metrick and Kimble. Doc. 107 at 25. Plaintiff agrees with respect to Officer Metrick, but not Officer Kimble because he allegedly was "the ranking officer at the scene." Doc. 120 at 22. The Court need not decide this issue given that summary judgment will be granted on the claims asserted against Officer Kimble.

Defendants assert in their motion that Plaintiff has presented no evidence of past medical expenses. Doc. 107 at 26. Recognizing that they are incorrect (*see* Doc. 120 at 23), Defendants argue in their reply that an award of past medical expenses should be limited to $43,066.35. Doc. 128 at 21. The Court will not consider this new argument. *See Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot be raised for the first time in a reply brief."). The Court will deny summary judgment with respect to past medical expenses.

Plaintiff agrees that he has no claim for future medical expenses or lost wages. Doc. 120 at 22-23. The Court will grant summary judgment in this regard.

**IX. Conclusion.**

The claims remaining in this case are the following claims asserted against Officer Crockett: assault and battery (count three), intentional infliction of emotional distress (count four), and excessive force and deliberate indifference under § 1983 (part of count six). Summary judgment is granted with respect to future medical expenses and lost wages and

denied with respect to past medical expenses.

**IT IS ORDERED:**

1. Defendants' motion for partial summary judgment (Doc. 107) is **granted in part and denied in part** as set forth in this order.

2. The Court will set a final pretrial conference by separate order.

DATED this 27th day of August, 2010.

_____
David G. Campbell
United States District Judge